I would like to move the admission of one of my law clerks, Ranganath Sudarshan, as a member of our Bar. I know that he is a member of both the Bars of California and the District of Columbia, and has wonderful standing in both of those Bars. As you probably can testify with me, he has contributed magnificently to the work of this Court. I can move his admission with great confidence my colleagues will join me. After considerable thought, I agree. The motion is granted, and we thank all of these three clerks for their excellent service, their contributions toward the Court. It's hard to imagine how we could handle the volume and difficulty of the cases we have without the able assistance of these exceedingly bright, engaged, energetic, dedicated young lawyers. And now I turn the gavel over to Judge Lurie as the senior member of the panel so that I may make a motion on behalf of two of my own law clerks. Please do so, Judge Michel. I move the admission of James Asa High, Jr., who is a member in good standing of the Bar of the highest court of the State of California, and of Zhenyu Yang, who is a member of the Bar in good standing of the highest state of California and also of the District of Columbia. I have knowledge based on personal contact and collaboration of the credentials of each of these lawyers, and I'm more than satisfied that they possess all the necessary qualifications. So now I have to ask my colleagues to rule on the motion. Judge Rader, do we have your vote? You do. Certainly you can have my vote, and as a fellow member of the Ninth Floor, I'm certainly aware of their excellent qualifications, and I grant the motion. You're not discriminating against the Eighth Floor? No, just in terms of knowledge. Greater rather than lesser knowledge. So would you all please stand and face the clerk of court for the administration of the oath? Please raise your right hand. I swear or affirm that you will comport yourselves as attorneys and counselors of this court, uprightly and according to law, and you will support the Constitution of the United States of America. Congratulations and welcome to the Bar of the United States Court of Appeals. I only add that I hope someday we'll see the three of you standing at this podium arguing cases for the court. Congratulations to each of you. All right. Now the cases at hand. We'll hear argument first in Four Rivers Investment v. United States Appeal 5017 from 2008. Mr. Goldstein, good morning to you. Welcome to the court. Thank you. Please proceed. Thank you. On appeal, the all facts must be presumed as true and construed reasonable inferences in favor of Four Rivers. I believe we have one better. The underlying assessment upon which the levies were issued was recently held by a U.S. District Court, a jury, as invalid. The government appealed that decision but then withdrew their decision on June 24, 2009. I just was recently informed of it. I do have copies if your honors would care to see that. So I think I'd like to state for the purpose of this oral argument that we should believe that the underlying assessments were invalid. A jury has confirmed that at the U.S. District Court of Northern California. We decide this case on the record before us. If that's another holding, that will go through a separate room of appeal. If there is to be one. Sure. I agree with that. This is if the door opens to that next step. The issue really is, is my client barred by the section 6532C that the corporation filed its claim nine months after the date of the levy. We are arguing that equitable tolling or equitable estoppel, I don't think there's a difference. This court in RHI Holdings held that there is not a significant difference between equitable tolling and equitable estoppel, citing Irwin, because Irwin stated that if it's equitable estoppel even before us, was it argued to the court below so that we could consider it as something on review? Equitable tolling was, and the facts, the same allegations. If equitable estoppel is linked to equitable tolling and equitable tolling isn't really before us, does that injure your equitable tolling argument? I don't believe so, Your Honor, because the underlying facts, whether we call it tolling or estoppel, we are still alleging that there was misconduct by the IRS. And I believe this court has held that any difference is not significant, as Irwin actually said. Equitable tolling includes inducement or... What's the misconduct by the IRS? The misconduct in this case would be several things. One is making an invalid assessment, perhaps a fraudulent assessment, or at least ignoring the rules to making the assessment first. The second misconduct could be that, and again, this would have to be argued on the facts, I believe, but the second... But misconduct in general isn't the issue. The issue is whether the IRS did something to induce you to file your lawsuit more than nine months after the levy. Correct, and I've actually... So filing an improper levy has nothing to do with inducing you to wait. If they filed an improper levy and you thought it was improper, you would have been expected to act immediately, not several years too late. Yes, but the IRS actually, in this case, our argument is, and again, I believe this is more for the factual findings, but would be... Is it equitable to toll because the IRS issued a letter stating that basically there was no... My client or the taxpayer here was not actually responsible or her corporation... Wait a minute, the letter didn't mention Four Rivers Investment. The letter only mentioned Mrs. Seidel. Correct, and Mrs. Seidel was 100% owner of the corporation. But the party appealing here is not Mrs. Seidel, it's Four River Investment. So how does Four River Investment get an excuse for filing several years late by the fact that IRS addressed some comments to Mr. and Mrs. Seidel in their individual capacity? Well, because I don't believe you can take one capacity away from the other. If she was 100% owner, it was essentially 100% owned by Mrs. Seidel, had nothing to do with Mr. Seidel, is our contention, and that... We're lawyers. I would just argue... We're lawyers. We know a distinction between people in their individual capacity and people in their corporate capacity. That's what corporations are for. I'm sorry? That's what corporations are for, to create a distinction. Correct, correct, but... Excuse me. I would just argue that they were also intertwined, these parties, with the same collector, the person who made the assessment, the revenue officer in this case, that they would all be one and the same. And, in fact, that's how the IRS actually attacked the corporation, was stating it was the alter ego of Mr. Seidel. So I would argue that the IRS cannot necessarily argue that it's the alter ego of Mr. Seidel. Is there a target of any particular investigation? So I'm still puzzled as to why that letter gives you any traction at all. Well, if she's not the target, I believe it could be... The argument could be that it could be reasonably inferred that as she received that letter, if she's not the target, neither would any of her assets, and it's certainly her asset, the corporation. Well, but that wasn't the theory. The theory was that the corporation was an alter ego of Mr. Seidel, that he had perhaps transferred it to his wife and to a corporate entity to avoid the taxation. Why weren't they within their rights to at least explore that avenue? The IRS? Yes. Well, I would argue that they could... Well, if there's no valid assessment, I would say they don't have any right to go after any asset whatsoever. And, again, we would still, I believe, have the right to say there's been no proof. The IRS has never presented anything other than a statement that it's the alter ego. There's been no factual finding by any court or other administrative view other than the IRS. If your view was that there's no basis for saying that Four Rivers Investment is nothing but the alter ego of Mr. Seidel, then you should have immediately filed a protest way back in April 2003 when the levy was first made. So how is the letter encouraging you to wait later than the period required for making such a protest? Well, again, I think it would be up to a factual finding, meaning we could determine if there was any statements in addition to the letter. We haven't had the opportunity to even... No, no. You can't argue from things that are not in the record. The only thing in the record to which you're pointing is a single letter. You can't say there might have been some other letter that's not in the record. The question is what is in this letter that induced and encouraged Four River Investment to think they should wait and not file their protest promptly? Well, because they didn't believe from the start that the assessment was valid. That has nothing to do with when they should file the protest. That's why you make a timely challenge. If you don't think it was correct, you don't just wait. You make a timely challenge. Well, I guess it would be a question of did she receive proper notice of the levy and take it in conjunction with the levy? But the counterstatement by the IRS is saying, look, you're not responsible. And I think it could be reasonably inferred from her perception that if I'm not responsible, neither would any of my assets be subject to an IRS levy. And therefore, I don't have to act because... Maybe her assets aren't. But the IRS charged that Four Rivers became the transferee of his assets. And the letter that you refer to made it clear that the IRS did hold him liable for all $600,000 of unpaid taxes. Well, again, I would just say that if there was no valid assessment and she needs the right to argue, or the corporation would have the right to argue it, but I would say she was lulled into inaction based upon... Again, if she's reading it, she's not an attorney, she doesn't have any legal background, she reads it thinking, I'm not responsible, there's nothing I need to do at this point because either my... I think we understand that argument. What's the next argument? So then if we could potentially find that there was some sort of misconduct by the IRS, the next question becomes, are we still allowed beyond the nine months? The Court of Claims stated with Brokamp, which is under 6511, that the 6532C is similar to 6511. The Court cited Becton-Dickinson, which is a Third Circuit. The Court ignored the Ninth Circuit case of Supermail Cargo. But under Brokamp, isn't the test what Congress intended? And Congress gave some exceptions here, which doesn't include present facts. Well, I would state actually that 6511 creates a proactive, it's a proactive, and 6532 is a reactive. You only react because the IRS did something. And if you never received notice of it, in fact, 6532C never states that notice has to be given. It's totally silent on notice. 6511 states it's not, the notice is the actual statute. Brokamp, the Supreme Court, said four times in the statute it gave notice of the specific time periods required, and that was the notice. In 6532A, which has also been addressed by this Court, the notice is two years, you have two years after the date of notice, and notice must be certified mail or registered mail. Under 6532C, it says there is no mention of notice. It just states from the date of the levy. Well, if we must imply then that the taxpayer got notice, otherwise the IRS could levy. If the IRS does a misaction, which happened in Supermail, to prevent notice actually being given within nine months, the statute runs, and the IRS has basically shielded itself from all claims. So the IRS has potential for a ton of abuse, because in each case they could issue a levy, not give notice to the taxpayer, or perhaps... Did they not have notice of the lien? That has not been factually known yet. And I think we'd have to get access to the IRS file, and that would, I believe, be funded trial. How can there be any doubt whether Four Rivers got notice of the lien? They settled the lien with IRS and agreed to pay something like $160,000. So of course they had notice. They wouldn't have paid money if they hadn't gotten notice that led to the payment. If I may correct that, sir, it's a levy that we're arguing. The lien is not at issue on appeal. It's a $44,000 of a levy. That levy went to actually a third party. It did not get attached to land or notice on sale. It went to Four Rivers Bank. Correct. Are you saying that Four Rivers Bank doesn't send statements to the Four Rivers officers? That would have to be, I think, discovered on trial to see if that was done properly. I can't say at this point whether that was done or not in that case. The argument would be if no notice was given, what we have to imply in 6532, to have equitable tolling or estoppel, it needs to be inferred or implied in this case. If we have to imply there's no notice, or there has to be notice, because otherwise how would you know to even bring the claim? And if the IRS abuses that discretion or doesn't give notice, the clock would never start ticking. So it has to be that 6532C, there has to be equitable tolling because it also doesn't describe how notice is given. In 6532A, it specifically says registered mail or certified mail. Under 6511, the notice is the statute itself. And the notice is so specific, the Supreme Court said in Brokamp, that it says it four times and it's so clear. Under 6532C, there's actually no mention of notice. It just states from the date the levy is issued. You mentioned that several times. Do you want to reserve any of your remaining rebuttal time? Yes, sir. Thank you, Your Honor. Thank you, Mr. Goldstein. Ms. Milton? Ms. Milton, if the levy is already established as wrongful and finally adjudicated, tell us what we're here for. Your Honor, I hope you're here to affirm the finding that there is no review available for Rivers because of the untimeliness of the action that they filed. So what will happen? Even though the levy is adjudicated as wrongful? I believe you're asking about the assessment. Well, see, I'm a little confused. We don't actually have anything in the record on whatever happened in Northern District of California, but I'm hoping you can tell us. Well, Your Honor, I'm sorry, I can't. I learned of this this morning when I saw the documents that Mr. Goldstein has brought. Mr. Seidel is not a party to this proceeding, so it might seem surprising that I don't know anything about his tax affairs, but I pretty much don't. In any event, what you're arguing is that whatever we do here is irrelevant to whatever happened there. You're saying there's no jurisdiction here, so we're not ruling on the correctness or lack of correctness of whatever happened elsewhere. Yes, Your Honor, and I wanted to point out also as well. Is it the same levy, though? If there's no longer a valid levy, is this action moot is essentially where I'm going. No, Your Honor, I don't. Well, the action is moot in the sense that the levy has already been honored and the IRS has collected the money and they have failed timely to challenge it, so they have no basis for recovering the money, but the assessment itself would not have been at issue even if they had timely challenged the levy because their action would have been under Section 7426 of the code, and 7426C says that the assessment is conclusively presumed valid for purposes of the only action that they would have had available had they brought it timely. So in some sense, the validity of the assessment is irrelevant. I mean, not in some sense, in every sense in a wrongful levy action. So this late development as to a finding of a jury that the assessment was not valid, and I honestly don't know anything about what was before the jury in that case, and I certainly don't know what underlay the fact that the appeal was voluntarily dismissed, but in any event, even if the assessment was not valid and that has been finally established, it would not have been an issue in the wrongful levy action. What would have been at issue had they timely brought a wrongful levy action was whether or not the taxpayer, Mr. Seidel, had an interest in property of Four Rivers so that the IRS could collect from Four Rivers property as an alter ego of Mr. Seidel, and that's the only thing that would have been at issue. It would have been questions of title and property ownership, not the underlying assessment. As to the equitable estoppel argument, which now seems to have morphed into or returned to an equitable tolling argument, we argued in our brief, and I think it's correct that the equitable tolling argument was waived. It wasn't briefed by the appellant here. This super mail cargo case that has been mentioned in argument doesn't appear in the brief, and there was no argument about equitable tolling that was made on appeal. The equitable estoppel argument is a new one, and therefore we would argue not properly before the court, but I think the court has explored whether or not a showing has been made. Even so, we would say that there was certainly no affirmative misconduct by the IRS, to the extent the argument is that a letter sent to Mrs. Seidel in 1999 misled her. We would argue that the levies didn't take place until 2003, so even if from 1999 to 2003 she had been lulled into some sense of security about her own assets, and I would say that's not inaccurate. Her own assets have not been collected. By 2003, when the levies took place, certainly she was aware that there was a problem and that some assets to which she had a connection through her corporation were in jeopardy. Is it the case that IRS withdrew something like $50,000 from a couple bank accounts owned by Four Rivers? Yes. They were a brokerage account and a bank account. Brokerage account. They paid over pursuant to levies that the IRS served on them. Right, so that much value was withdrawn from two Four Rivers accounts. Yes. And as a matter of fact, do you know whether Four Rivers was notified of that by the IRS? I do not know that. Again, that's a new issue on appeal, the challenge to that whether or not proper notice was given. The record contains notices of the levies which list the entities that were being levied on, and typically those notices would be sent to the person whose property was subject to the levy, but I'm not sure that those items are in the record because I'm not sure that there has been. I know there has not been an issue raised prior to now about total compliance with the notice procedures as to those levies. It's your argument we should affirm the lack of jurisdiction, but you're not arguing in accordance with Judge Rader's question that we should dismiss as a mootness. No, sir. I think the appropriate remedy would be affirmance for lack of jurisdiction. Anything further? No, Your Honor, unless there are questions, I think I'm through. Thank you. Mr. Goldstein, you have two minutes. Thank you, Your Honor. I would just like to state two things. I did not handle the case on – I'm only handling the appeal, and I believe in super male, as the Court stated. We need to show that we may be able to prove a set of facts under which this action could be equitably told or equitable. Again, I think RHI states there's no significant difference. I don't think we have to show that at this appeals level that, in fact, we would be victorious on that issue, just that we have an argument to make, and it should be rendered based upon all the known facts, and we wouldn't be able to get those facts without, I think, more exploration. With respect to the jurisdiction, again, I think Becton Dickinson, which is specifically with 6532C and relies on Brokamp, is actually construed too liberally. I think the facts in that case, the IRS is not alleged of doing any improper conduct. In super male, it is alleged the IRS did do misconduct. We are making that same allegation. And again, jurisdiction – if there is no jurisdiction, obviously we can't move forward. There's no equitable tolling or equitable stoppable. Logically, how can a letter sent to her in 1999 make her think that a levy in April of 2003 is something that she shouldn't promptly protest if she disagrees with it? I don't understand the logic of that at all. I think it would just be she received assurance that she's not responsible, so in her mind, she would be thinking that, well, this levy must be incorrect. Something is going to change to stop it. Nine months is not a whole lot of time, especially when you are not necessarily involved with legal counsel. This isn't your issue. She's told in 2003, as I understand the record, that her company, Four Rivers, is viewed by the IRS as the transferee or alter ego of her husband's property, and that therefore debts he owes IRS are going to be taken out on Four Rivers. So when she's told that in April of 2003, how does the letter have any relevance as to whether she thinks she should wait rather than protest what she regards as an erroneous or improper levy? I'm not sure, Your Honor, if there has been proven definitively that there is notice given. Again, we have copied the IRS levy. When they're taking money out of your account, that's pretty notice supplying, isn't it? Well, number one, that's only if you're checking your account balance daily. It's possible some people don't check their balances for more than nine months, number one. And number two, that's assuming the bank did send notice or that the IRS did not say, hey, to the bank, please don't notify the taxpayer. Again, that would be misconduct by the IRS when it's saying it's right conduct. But I don't believe we've had the full opportunity to explore that because of the jurisdictional issue of not even opening the door to get to those facts and that argument. That's quite a statement that some people don't check their balance in nine months. Most banks send monthly statements. Correct, but I would argue that the IRS still has that affirmative duty to send the notice that it's not the third party's duty, and third-party notice wouldn't necessarily qualify, but the IRS actually has to send it directly to the taxpayer. All right. I think we understand the case for both sides. I take the appeal under advisement. Thank you very much, Your Honor.